```
                    UNITED STATES DISTRICT COURT
                    EASTERN DISTRICT OF LOUISIANA


KENNETH THURMAN                                    CIVIL ACTION

VERSUS
                                                   NO: 09-4142
WOOD GROUP PRODUCTION SERVICES, ET AL.
                                                   SECTION: J(3)
```

## ORDER AND REASONS

Before the Court are Defendant Wood Group's **Motion for Summary Judgment (Rec. Doc. 75)** against Intervenor Plaintiff SeaBright Insurance Company ("SeaBright"), Intervenor Plaintiff SeaBright's **Opposition (Rec. Doc. 79)**, and Wood Group's **Reply in Support (Rec. Doc. 87)**, SeaBright's **Sur-Reply (Rec. Doc. 89)**.

### PROCEDURAL HISTORY AND BACKGROUND FACTS

This litigation arises out of Plaintiff Kenneth Thurman's accident on February 20, 2009. At the time of his injury, Mr. Thurman was employed by Fluid Crane and Construction, Inc. Prior to this incident, Fluid Crane executed a Master Service Agreement ("MSA") with Energy XXI. Pursuant to the terms of that contract, Fluid Crane sent Mr. Thurman to perform welding services on Energy XXI's Main Pass 61-A fixed platform in the Gulf of Mexico located on the Outer Continental Shelf. Also pursuant to the agreement, Fluid Crane was required to have workers' compensation coverage–both state workers' compensation and compensation under the Longshore Harbor Workers Compensation Act (LHWCA). Additionally, Exhibit A to the MSA included the

following language: "All insurance policies shall contain the provision that the insurance companies waive the right of subrogation against ENERGY XXI, its agents, . . . contractors, subcontractors, and their insurers." In order to fulfill its obligation to carry workers' compensation insurance, Fluid Crane bought a policy from SeaBright Insurance Company. SeaBright's policy included a "waiver of [] right to recover from others endorsement."

Energy XXI also contracted with other companies to perform work on the Main Pass 61-A. Defendant Wood Group provided various services, including operating the personnel crane on occasion. Defendant Graham Gulf, Inc. ("Graham Gulf") was the owner and operator of the crew boat (M/V GULF PROTECTOR) that transported contractors to and from Main Pass 61-A. On February 20, 2009, Mr. Thurman finished his work day and prepared to board the M/V GULF PROTECTOR, via a platform-based crane which was operated by a Wood Group employee. During the transfer, the personnel basket accidentally made contact with the side rail of the M/V GULF PROTECTOR, causing injury to Mr. Thurman.

As a result of his injury, Mr. Thurman seeks damages against Defendants Wood Group and Graham Gulf. SeaBright, in its capacity as the workers' compensation insurer of Mr. Thurman's employer, Fluid Crane, has intervened seeking to recover benefits paid to Mr. Thurman. As of August 8, 2010, SeaBright had paid $44,095.39

in medical expenses and $57,718.30 in indemnity benefits. Defendant Wood Group has moved for summary judgment against SeaBright on the grounds that the waiver of subrogation provisions in both the MSA and the SeaBright policy precludes the recovery of compensation paid by Seabright (Rec. Doc. 75).

### THE PARTIES' ARGUMENTS

SeaBright claims that it was subrogated to Kenneth Thurman's cause of action against Wood Group in the amount of indemnity and medical benefits pursuant to its workers' compensation policy with Fluid Crane. Defendant argues that SeaBright has waived any subrogation rights it may have had against Wood Group. Defendant cites to the MSA, which required that insurers waive the right to subrogation, and to Seabright's policy, which contains a waiver of the right to recover from others.

Further, Defendant argues that Louisiana law clearly allows such waiver of subrogation provisions to be enforced. Hudson v. Forest Oil Co., No. 02-CV-2225, 2003 WL 21276385 (E.D. La. June 2, 2003), aff'd 372 F.3d 742 (5th Cir. 2004). There, the insurer contended that the waiver of the subrogation clause was invalid under the Louisiana Oilfield Anti-Indemnity Act (LOAIA). But, Fifth Circuit disagreed, finding that invalidating a subrogation waiver does not promote the purpose of the LOAIA and that Fontenot v. Chevron USA, Inc., 676 So. 2d 557 (La. 1996) applied. "Fontenot tackled the validity of waivers of subrogation used on

3

their own: precisely the situation here because [the parties] solely and formally invoked [the insurer's] waiver of subrogation as a defense to [the insurer's] intervention, not as an indemnity provision." 372 F.3d at 747.

Intervenor Plaintiff SeaBright responds that the MSA does not unambiguously waive subrogation against contractors of Energy XXI. SeaBright explains that the subrogation clause cited by Defendant is only included in "Exhibit A," an attachment to the master contract. Moreover, SeaBright argues that this is not binding because, by its terms, the MSA (which had signature lines *before* Exhibit A) only bound the parties to the express terms of the actual MSA. SeaBright also points out that although the other exhibits, Exhibits B and C, include signature lines, Exhibit A was not signed, nor did it include a line for a signature.

For additional support, SeaBright directs the Court to Paragraph 11 of the MSA, which explicitly adopts Exhibits B and C in their entireties; whereas Paragraph 3 of the MSA, which governs insurance, only references the amounts of insurance listed in Exhibit A. SeaBright also finds significant that Paragraph 3 requires Fluid Crane to specifically waive its insurers' rights of subrogation in favor of Energy XXI, as co-lessees or joint venturers. However, Paragraph 3 of the MSA does not specifically require waivers in favor of Energy XXI's contractors or subcontractors, such as Wood Group.

SeaBright argues that the absence of such specificity in the MSA creates an ambiguity, and any doubt about the meaning of a contract are resolved by interpreting the contract against the party who created it. SeaBright argues that its situation is analogous to that of a party seeking to enforce a contractual defense and indemnity provision, and it cites <u>Tirante v. Gulf States Utility Co.</u>, 412 So. 2d 128 (La. App. 1 Cir. 1982), which found an ambiguity existed when indemnity language in an addendum was in conflict with the language in the main body of the contract. There, the court did not enforce the more restrictive contractual provision included in the addendum. <u>Id.</u> at 135.

SeaBright argues in the alternative that even if the MSA did unambiguously require a subrogation waiver, the LOAIA would invalidate it. La. Rev. Stat. 9:2780. Under SeaBright's reading, the LOAIA invalidates a provision contained in an agreement pertaining to a well for oil or gas that provides for defense or indemnity of a claim relating to the death of bodily injury resulting from the fault or negligence of the indemnitee. SeaBright also contends that the LOAIA unambiguously invalidates waivers of subrogation agreements with insurance companies. Pursuant to that logic, SeaBright argues that the LOAIA is clear on its face, the Court should interpret the statute accordingly.

SeaBright argues that its proposed application of the LOAIA can be reconciled with <u>Fontenot</u> and with <u>Hudson</u> because those

rulings "appear to only apply the [LOAIA] to waivers of subrogation where the defendant is also seeking contractual defense and indemnity or additional insured's status under the same Master Service Agreement." Alternatively, SeaBright argues that Fontenot and with Hudson should be reconsidered.

Wood Group responds that SeaBright relies on an alleged conflict between the terms of the MSA and the terms of Exhibit A. But, Wood Group argues, the two are not in conflict at all; rather, they "each impose different obligations upon Fluid Crane and its insurers." Accordingly, they can be read to work in tandem. Wood Group cites to In Re Elevating Boats, LLC, 286 Fed. Appx. 118 (5th Cir. 2008), which held that the obligations in an exhibit to an MSA were separate and apart from those listed in the body of the MSA itself. Wood Group also points out that SeaBright failed to meaningfully distinguish the facts of this case from those in Fontenot and Hudson and further that SeaBright failed to cite any supporting authority for the proposition that these cases should be overruled.

Lastly, in its Sur-Reply, SeaBright distinguishes the instant facts from the case cited by Wood Group, In Re Elevating Boats, LLC, in which the MSA clearly incorporated the relevant exhibit into the terms of the contract. Here, SeaBright argues that only the amounts of insurance in Exhibit A are expressly referenced and incorporated into the terms of the MSA.

**DISCUSSION**

Summary judgment is appropriate when "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c)(2); Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986); Little v. Liquid Air Corp., 37 F.3d 1069, 1075 (5th Cir. 1994). When assessing whether a dispute as to any material fact exists, the Court considers "all of the evidence in the record but refrains from making credibility determinations or weighing the evidence." Delta & Pine Land Co. v. Nationwide Agribusiness Ins. Co., 530 F.3d 395, 398 (5th Cir. 2008). All reasonable inferences are drawn in favor of the nonmoving party, but a party cannot defeat summary judgment with conclusory allegations or unsubstantiated assertions. Little, 37 F.3d at 1075. A court ultimately must be satisfied that "a reasonable jury could not return a verdict for the nonmoving party." Delta, 530 F.3d 399.

The issue before the Court is whether the waiver of subrogation clause, appearing only in the addendum and not incorporated explicitly into the body of the MSA, is enforceable. Parties do not dispute the basic facts. The clause that Defendant seeks to enforce is present only in Exhibit A, which was not separately signed. The clause in question reads, "All insurance

policies shall contain the provision that the insurance companies waive the right of subrogation against ENERGY XXI, its agents, . . . contractors, subcontractors, and their insurers." The MSA only specifically references the required insurance amounts listed in Exhibit A–even though the MSA specifically incorporates the other exhibits in their entireties. However, Exhibit A was physically attached to and clearly referenced in the MSA itself, which was signed by the parties.

Defendant cites to In Re Elevating Boats, LLC, 286 Fed. Appx. 118 (5th Cir. 2008), a case in which the Fifth Circuit enforced obligations mentioned in an exhibit to the MSA as separate and apart from the obligations listed in the MSA. SeaBright attempts to distinguish the present scenario from the one in In Re Elevating Boats, LLC by explaining that the MSA at issue in In Re Elevating Boats, LLC explicitly incorporated the attachments, whereas the MSA at issue in this case only references the amounts listed in Exhibit A.  Although SeaBright is correct that the parties in In Re Elevating Boats, LLC drafted a more explicit contract, "jurisprudence is clear that documents may be incorporated in contracts by attachment or reference thereto." Action Finance Corp. v. Nichols (La. App. 2 10/28/65); 180 So. 2d 81, 83 (upholding the enforceability of a provision on the reverse side of a contract when the front side of the contract incorporated the reverse side). Here, there is no

question that Exhibit A was physically attached to the MSA when the parties signed the MSA, along with Exhibits B and C. There is also no question that the MSA referenced Exhibit A as being attached.

Exhibit A was thus incorporated into the MSA by virtue of its attachment and reference. See L&A Contracting Co., Inc. V. Ram Industrial Coatings, Inc. (La. App. 1 6/23/2000); 762 So. 2d 1223 (citing to the general rule that separate documents can be incorporated by attachment, but finding that a term mentioned only in a bid was not part of the subcontract when the subcontract made no reference to a bid); Russellville Steel Co., Inc. v. A&R Excavating, Inc. (La. App. 5 8/26/93); 624 So. 2d 11 (finding that language in an exhibit was part of the main contract when the main contract referred to the exhibit and when the exhibit was physically attached); Harper v. Concrete Structures, Inc. (La. App. 2 4/4/62); 140 So. 2d 653 (finding that the principal contract incorporated by reference the attached plans and specifications and accordingly read all of the documents together).

Courts also look to the intent of the parties to determine whether separate documents are part of a contract. See, e.g., Admiral Paint Co. v. Goltzman (La. App. 3 10/22/71); 254 So. 2d 104, 106 ("When more than one instrument is used, it becomes necessary to ascertain whether or not the parties contemplated

9

that all are to be construed together in deriving the totality of the contract . . . ."). The facts before the Court suggest that the parties clearly intended to construe the MSA and all of the attached exhibits together.

Both the Louisiana Supreme Court and the Fifth Circuit have held that such a waiver of subrogation is enforceable and does not violate LOAIA. <u>Fontenot v. Chevron USA, Inc.</u>, 676 So. 2d 557 (La. 1996); <u>Hudson v. Forest Oil Co.</u>, 2003 WL 21276385 (E.D. La. 2003), <u>aff'd</u> 372 F.3d 742 (5th Cir. 2004). SeaBright's suggestion that the Court reconsider the rationale of <u>Hudson</u> and <u>Fontenot</u> is unavailing.

For the foregoing reasons, Defendant Wood Group's **Motion for Summary Judgment (Rec. Doc. 75)** against SeaBright is **GRANTED.**

New Orleans, Louisiana, this 18th day of November, 2010.

_____
CARL J. BARBIER
U.S. DISTRICT COURT JUDGE